UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

RONALD McRAE,

   Plaintiff,                                              CASE NO.:

-VS-

AMSHER COLLECTION SERVICES, INC.,

   Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, RONALD McRAE, by and through the undersigned counsel, and sues Defendant, AMSHER COLLECTION SERVICES, INC., ("Amsher"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like AMSHER COLLECTION SERVICES, INC., N.A., from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious. Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their

1

political information (not to mention their advertisements) [*6] in other ways." *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8. The alleged violations described herein occurred in Philadelphia County, Pennsylvania. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as

it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Pennsylvania, residing in Philadelphia, Philadelphia County, Pennsylvania.

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendant is a corporation with its principal place of business located at 4524 Southlake Parkway Suite 15, Hoover, AL 35244, and which conducts business in the State of Pennsylvania.

12. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (267) *** - 4811, and was the called party and recipient of Defendant's hereinafter described calls.

13. Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (267) *** - 4811.

14. On several occasions over the last four (4) years Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

15. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (855) 894-1090, and when that number is called, an agent/representative answers the phone and identifies themselves as an employee of Amsher.

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system"

which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received, and because when he answered a call from the Defendant he would hear an extended pause before a representative would come on the line.

17. Plaintiff does not currently have any account or business relationship with Defendant.

18. In or about April of 2017, Plaintiff answered a call from Defendant, met with an extended pause, held the line, was eventually connected to a live representative, and informed an agent/representative of Defendant that he did not have an account with them, and demanded that they cease calling his aforementioned cellular telephone number.

19. During the aforementioned April of 2017 phone call with Defendant, Plaintiff unequivocally revoked any express consent Defendant may have mistakenly believed they had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

20. Each and every call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

21. Each and every subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

22. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff informing Defendant that he did not have an account with them.

23. On at least five (5) separate occasions, Plaintiff has either answered or returned a call from Defendant, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to his aforementioned cellular telephone number.

24. Defendant has placed approximately eighty (80) calls to Plaintiff's aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of thirteen (13) calls from April 3, 2017 through April 21, 2017).

25. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to call individuals, just as it did to the Plaintiff's cellular telephone in this case.

26. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

27. Defendant's corporate policy is structured so as to continue to call individuals like, Plaintiff; despite these individuals explaining to Defendant they wish for the calls to stop.

28. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

29. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

30. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

31. Defendant's corporate policy provided no means for the Plaintiff to have his number removed from the call list.

32. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called

33. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

34. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

35. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

36. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant call.

37. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. Plaintiff had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

38. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected

the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

41. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services

42. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affected in a personal and individualized way by stress, frustration, and aggravation.

## COUNT I
### (Violation of the TCPA)

43. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-two (42) as if fully set forth herein.

44. Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified

7

Defendant that he was not the individual for whom the Defendant was calling and wished for the calls to stop.

45. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, RONALD McRAE, respectfully demands a trial by jury on all issues so triable and judgment against Defendant, AMSHER COLLECTION SERVICES, INC., for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

Jonathan D. Clemente, Esquire
Pennsylvania Bar No.: 40053
Clemente Mueller P.A
BNY Mellon Center
1735 Market Street
Suite 3750
Philadelphia, PA 19103
Telephone: (973) 455-8008
Primary Email: jclemente@cm-legal.com
*Local Counsel for Plaintiff*

*And*

*/s/Shaughn C. Hill*
SHAUGHN C. HILL, ESQUIRE
Florida Bar No. 105998
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email: SHill@ForThePeople.com

Secondary: LCrouch@ForThePeople.com
*Application for Pro Hac Vice to be filed*

# Phone Call Log for (855) *** - 1090

|     | Date       | Time     | Caller          |
|-----|------------|----------|-----------------|
| 1.  | 04/03/2017 | 12:50 pm | (855) 894-1090  |
| 2.  | 04/04/2017 | 12:02 pm | (855) 894-1090  |
| 3.  | 04/06/2017 | 06:37 pm | (855) 894-1090  |
| 4.  | 04/10/2017 | 05:39 pm | (855) 894-1090  |
| 5.  | 04/11/2017 | 03:19 pm | (855) 894-1090  |
| 6.  | 04/12/2017 | 01:48 pm | (855) 894-1090  |
| 7.  | 04/14/2017 | 10:41 am | (855) 894-1090  |
| 8.  | 04/15/2017 | 11:09 am | (855) 894-1090  |
| 9.  | 04/17/2017 | 09:53 am | (855) 894-1090  |
| 10. | 04/18/2017 | 11:38 am | (855) 894-1090  |
| 11. | 04/19/2017 | 02:09 pm | (855) 894-1090  |
| 12. | 04/19/2017 | 05:20 pm | (855) 894-1090  |
| 13. | 04/21/2017 | 05:04 pm | (855) 894-1090  |

EXHIBIT "A"